**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LISA M. GILLEMS,** | |
| Plaintiff, | |
| v. | Case No. 10 C 5227 |
| **HAPAG-LLOYD (AMERICA) INC.,** | Hon. Harry D. Leinenweber |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

On May 5, 2008, the Plaintiff, an African-American female, at the age of 43, was hired by Defendant as a "Customer Service Coordinator" to work in its Rate Department. As a new employee Plaintiff was subject to a 90-day probationary period, during which her suitability for employment was to be evaluated. Plaintiff's direct supervisor and the person responsible for her training was Customer Service Manager, Shannon Smerdon ("Smerdon"). In additional to a supervisor, Plaintiff was assigned a "partner" to act as a mentor. Plaintiff's partner was Amy Ross ("Ross"), a part-time Customer service Coordinator who had been with the company for two years.

The Defendant at relevant times maintained an Employee Handbook which contained various company policies and procedures, including a "Non-Discrimination and Anti-Harassment Policy. Prohibited conduct included use of derogatory remarks or jokes concerning protected characteristics. Employees are instructed by

the handbook to report promptly complaints of discrimination, harassment or retaliation.  Plaintiff also received a separate company document which stated that an employee could be terminated in the event the employee was found to have engaged in harassment of another employee.  The document also advised the employee that if dissatisfied with a decision resulting from a company investigation, an appeal could be taken of the decision.

Two months after Plaintiff started her employment, the Plaintiff engaged in what was described as a "loud and open" conversation about dog bowel movements.  A co-employee, Daniel Stodola, complained by e-mail to Smerdon about the conversation which he contended he had to endure for days.  Plaintiff was also the subject of complaints by another co-employee, Kimberley Sabillon, who said that Plaintiff made comments about her eye makeup which she viewed as offensive.  A third employee, Amy Ross (Plaintiff's partner), reported that Plaintiff, upon observing Ross' tattoo, told her that "black folk don't get tattoos" and "It's a colored thing."  Ross reported to Smerdon that these comments offended her.  About one week after the dog incident, Ross, Plaintiff's partner, sent her an instant message requesting that Plaintiff come to her work area to discuss a work issue.  Plaintiff responded that she would come "in a few minutes."  Ross replied, asking why she could not come immediately.  Plaintiff responded "Where do I have to answer to you?  You're not my boss."

Human Resource Director, Sylvester Burtin ("Burtin"), an African-American, met with Plaintiff and advised her that an employee had complained to him that Plaintiff had made a racial remark. Plaintiff admitted to Burtin that she made the "colored thing" comment. At no time during the meeting did Plaintiff, herself, make any allegation that she had been subjected to any act of discrimination, harassment, or retaliation. Burtin proceeded to conduct an investigation regarding the complaints against Plaintiff, during which he interviewed and obtained statements from several co-employees. He concluded that Plaintiff had indeed made inappropriate remarks, some of which were based on race, and was causing a morale problem with her co-workers. On July 23, 2008, Burtin met with Plaintiff and informed her that the company had decided to terminate her employment. At no time did Plaintiff raise any allegations of discrimination, harassment, or retaliation directed against her. Plaintiff did not appeal the termination of her employment.

Following her termination Plaintiff commenced this action in which she complains that she was discriminated against and harassed based on her race and age, and was retaliated against because of her race. Specifically Plaintiff contended in her deposition that she was discriminated against in the following ways:

1. Certain co-employees were allowed to take two-hour lunches and extended breaks;

2. She would do work for Amy Ross' accounts, but that Ross would receive credit for the work;

3. She was not permitted to walk around the office without notifying someone that she would be away from her desk for that period of time, while Ms. Ross and Mr. Stodola was allowed to do so; and

4. Ms. Ross was permitted to do "other things" while she was supposed to their work and nothing else other than what she was told to do.

Her claim of hostile work environment and age discrimination are based on essentially the same contentions as her claim of discrimination. She further contends that her termination was racially motivated because she was told by Burtin that his investigation had disclosed that she had made a racial remark toward black people.

## II. LEGAL STANDARD

"Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's race or sex, among other grounds. 42 U.S.C. § 2000e." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

## III. DISCUSSION

Since Plaintiff is contending that she was subjected to disparate treatment based on her race and age she must establish a *prima facie* case to avoid summary judgment. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination a plaintiff must offer evidence that (1) she is a member of a protected class, (2) her job performance met the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual

who was not a member of the protected class was treated more favorably than the plaintiff. *Id.*

Plaintiff argues that this last requirement, the requirement that she designate a similarly situated individual as a comparator, is waived by a showing that the employer sought a replacement after the employee was discharged. Thus she contends it is not necessary for her to provide comparators in order to establish a *prima facie* case. However this cannot be the case when the employer contends that the employee was discharged for failing to meet its legitimate expectations. If that was the case, any person who was fired for cause could establish a *prima facie* case by showing a replacement had been made because in almost all cases where a person is fired for cause, as opposed to a case of a reduction in force, the person discharged is replaced. Since Plaintiff was undoubtedly an at-will employee, her employer, the Defendant, was entitled to set its expectations at any level it wished as long as it did not use the expectations as a pretext to rid itself of employees who were in protected categories, *i.e.,* in a discriminatory manner. *Peele v. Country Mutual Insurance Co.*, 288 F.3d 319, 329 (7th Cir. 2002). Where the employer contends that an employee was not meeting its legitimate expectations, "a plaintiff [must produce] evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate *manner, i.e.*, applied expectations to similarly situated male and younger employees in a more favorable manner." *Id.* If a plaintiff is able

to do so then "the second and fourth prongs of *McDonnell Douglas* merge-allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry." *Id.*

Here Plaintiff was discharged because Defendant decided that she was not meeting its legitimate expectations due to her violations of company policies in the following respects: (1) she made several comments of a racial nature to at least one co-worker, (2) she engaged in other conversations that bothered co-workers to such an extent that at least one complained to her supervisor, and (3) she responded inappropriately to her mentor's attempt to provide her with training. While none of these complaints appear to be particularly offensive or serious (for example one of the charges against Plaintiff was that she denigrating her own race) nevertheless they were more than insubstantial. Making fun of a female's tattoo may be more than a little disconcerting to the recipient of the barb. In any event Plaintiff has failed to come up with any evidence that any comparator (male, younger, or Caucasian) was allowed to get away with similar conduct without being discharged. She suggests two co-employees: Rita Council and Amy Ross. However, neither was a probationary employee and neither was a recipient of a complaint by any co-employees similar to the complaints made against Plaintiff, or for that matter, a recipient of any complaints at all. In addition with respect to Plaintiff's

claim of age discrimination it is worthwhile to note that Council was herself over 40 years of age.

Moreover as far as race is concerned it is relevant that Burtin the person who conducted the investigation into the complaints lodged against her was himself an African-American, and less than three months previous the Defendant had hired her knowing she was African-American and over 40 years of age. Thus it is not reasonable to believe that Defendant would develop a racial or age discriminatory animus toward Plaintiff based on her age and race in so short a time. It is also relevant that Plaintiff never once complained to Burtin, or anyone else connected to the Defendant, about any racial harassment or discrimination to which she may have felt she was subjected. She also was aware of her right to appeal her discharge but did not do so.

When deposed Plaintiff limited here complaints to those listed above, all of which involved what she considered rights to which she was not entitled, such as long lunch hours, the right to stray from her desk, or the right to run errands. However she herself did not either avail herself of the right to do similar activities, or find out if she could or could not do so. In any event none of these so-called rights given to others could in any way, shape, or form be considered harassment or discrimination toward Plaintiff. Perhaps if Plaintiff had been fired for taking excessive time at lunch she might have a claim because she might have a comparator. In any case these actions could not be harassment as they were not

directed toward Plaintiff and were not severe or pervasive. The harassment must be so severe or pervasive so as to interfere with Plaintiff's work performance. *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008). Clearly this was not the case. Moreover, her failure to avail herself of the company's anti-harassment policy procedures would provide Defendant with an affirmative defense if, in fact, she had come up with any evidence of harassment. *Shaw v. Autozone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999).

Finally Plaintiff's claim of retaliation also fails. In order to establish a *prima facie* claim of retaliation a Plaintiff must show that she did something which could be retaliated against, such as make a complaint about racial discrimination or pursue some similar protected activity. However Plaintiff admits that she did not complain to anyone with Defendant that she was discriminated against either because of sex, race, or age. An employer cannot retaliate if it was unaware of any complaints. *Miller v. American Family Mutual Insurance Co.*, 203 F.3d 997, 1008 (7th Cir. 2000).

## IV. CONCLUSION

Since Plaintiff is unable to establish any *prima facie* case concerning any of her claims, *i.e.*, racial discrimination, age discrimination, harassment, or retaliation, judgment is entered in favor of the Defendant on each of the Counts of the Amended Complaint. The Complaint is dismissed with prejudice.

Defendant has moved to strike portions of certain Declarations of Portia Gurley and Rita Council. The Court did not rely on either of the Declarations so the Motion is denied as moot.
**IT IS SO ORDERED.**

                                                    _____
                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

**DATE:** 9/25/2012